[Cite as *State v. Layman*, 2016-Ohio-1503.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY


STATE OF OHIO,                                    :

    Plaintiff-Appellee,                      :       Case No.   14CA35

    vs.
                                                  :
LARRY K. LAYMAN,                                          DECISION AND JUDGMENT ENTRY

                                                  :
    Defendant-Appellant.

                                                  :

_____

APPEARANCES:

Warren N. Morford, Jr., Ironton, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Robert C. Anderson, Lawrence County Assistant Prosecuting Attorney, Ironton, Ohio, for appellee.

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 3-31-16
ABELE, J.

{¶ 1} This is an appeal from a Lawrence County Common Pleas Court judgment of conviction and sentence. Larry K Layman, defendant below and appellant herein, pled guilty to one count of drug trafficking in violation of 2925.03(A)(2)(C)(1)(d). Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE AFFIDAVIT FOR SEARCH WARRANT ISSUED FOR APPELLANT'S RESIDENCE FAILED TO ESTABLISH PROBABLE CAUSE."

SECOND ASSIGNMENT OF ERROR:

> "THE ISSUING JUDGE HAD NO SUBSTANTIAL BASIS UPON
> WHICH TO BASE A PROBABLE CAUSE FINDING."

{¶ 2}   Appellant and his son, Stephen Layman, lived next door to one another on Township Road 1034 near South Point.   In March 2014, officers involved with the Lawrence County "Drugs and Major Crimes Task Force" arranged for several "controlled buys" of Oxycodone from Stephen Layman through "Confidential Informant 240" (informant).[1]   The first "buy" occurred on March 17th when the informant went to Layman's home and gave him $640 in marked drug-buy money.   Layman did not immediately give drugs to the informant, but instead went next door to his father's (appellant's) residence.   When he returned from appellant's home, Layman gave the informant a baggie that contained "twenty Oxycodone thirty milligram tablets."[2]

{¶ 3}   The second "buy" occurred the following day (March 18th).   The informant arrived at Layman's home, but no payment was made to Layman initially because his father was not at his home.   Layman kept looking out his window and, once he saw appellant return home, Layman took $340 in marked drug buy money from the informant and walked next door.   After spending ten minutes inside with his father, Layman returned to his residence and promptly handed to the informant "Oxycodone 30 milligram" tablets.

{¶ 4}   On the basis of these buys, Lawrence County Sheriff's Department Detective

---

[1] It is unclear from the record how Layman spells his first name.  We use "Stephen" as it is used in the hearing transcript.   However, the affidavit in support of the search warrant uses "Steven."

[2] An earlier controlled buy occurred between Layman and the informant took place in the "Casa Grande" restaurant parking lot.  In light of the suppression hearing testimony that this event did not involve appellant, we focus our attention on the other two "controlled buys."

Aaron Bollinger requested a search warrant for appellant's home and filed a detailed, six page affidavit in support of the warrant request. After the search, sheriff's deputies found oxycodone, baggies that contained various other drugs and $40,000 in cash.[3]

{¶ 5} Subsequently, the Lawrence County Grand Jury returned an indictment that charged appellant with six counts of drug trafficking and three counts of drug possession. Appellant pled not guilty to all charges and, on July 9, 2014, filed a motion to suppress evidence. Appellant argued that Detective Bollinger's affidavit in support of the request for the search warrant was deficient. The gist of his argument was that the controlled buys were made from Layman, not appellant, and that the affidavit for the search warrant of appellant's residence was so "facially devoid of facts and riddled with conclusory statements" that it was insufficient to establish probable cause.

{¶ 6} At the hearing, Detective Bollinger testified as to the various circumstances that surrounded the controlled buys from Layman and how, on two occasions, the informant did not receive Oxycodone tablets until after Layman visited his father's home.

{¶ 7} After the hearing, the trial court overruled appellant's motion and concluded that the events that surrounded the controlled buys sufficiently established probable cause for the warrant to issue. Appellant then entered a guilty plea to one drug trafficking count in exchange for the dismissal of the remaining counts. The trial court sentenced appellant to serve a five year

---

[3] Although the August 1, 2014 suppression hearing transcript indicates that the original affidavit and search warrant were introduced as evidence during that proceeding, we have not found them in the original papers. We rely, instead, on the copies of those documents that the State submitted in its May 16, 2014 response to appellant's demand for discovery.

prison sentence.   This appeal followed.[4]

I

{¶ 8}   We jointly consider appellant's two assignments of error because they raise interrelated issues.   Appellant asserts that the affidavit submitted in support of the request for search warrant is inadequate and, therefore, the trial court erred by denying his motion to suppress.

{¶ 9}   Initially, we note that appellant entered a guilty plea to one count in exchange for the dismissal of the remaining counts, but nevertheless asserts that the trial court's denial of his motion to suppress evidence may be reviewed on appeal.   Generally, a guilty plea waives all appealable errors except for, inter alia, challenges that affect the validity of the guilty plea.   *State v. Robinson*, 4th Dist. Lawrence No. 13CA18, 2015-Ohio-2635; *State v. Ned*, 4th Dist. Adams No. 12CA942, 2013-Ohio-6116; *State v. Patterson*, 5th Dist. Muskingum No. CT2012-0029, 2012-Ohio-5600; *State v. Davis*, 8th Dist. Cuyahoga No. 102639, 2015-Ohio-4501.   Here, appellant's guilty plea arguably did not properly preserve the suppression issue for review. However, even if the issue had been properly preserved for review, we disagree with appellant's argument that the trial court erred in ruling on the motion to suppress evidence.

{¶ 10} Generally, appellate review of a trial court's decision on a motion to suppress

---

[4]Before we review the merits of the assignments of error, we first address a procedural deficiency. Appellant assigns two errors, but includes only a single argument in his brief.   App.R. 16(A)(7) requires a separate argument for each assignment of error.   Although appellate courts may jointly consider one or more assignments of error, litigants do not enjoy that same privilege.   The failure to include a separate argument for each assignment of error is grounds to disregard both arguments.   App.R. 12(A)(2).   Thus, we could simply overrule both assignments of error and summarily affirm the judgment of conviction and sentence. See e.g. *State v. Caldwell*, 79 Ohio App.3d 667, 677, 607 N.E.2d 1096, at fn. 3 (4[rd] Dist.1992); *State v. Houseman*, 70 Ohio App.3d 499, 507, 591 N.E.2d 405 (3rd Dist.1990); *State v. Colley*, 4th Dist. Scioto No. 06CA3095, 2007-Ohio-6478, at ¶6.   However, in the interests of justice, we will consider the assignments of error.

evidence involves mixed questions of law and fact.  See *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998); *State v. Norman*, 4th Dist., Ross App. Nos. 08CA3059 & 08CA3066, 2009-Ohio-5458, at ¶24.  When hearing and deciding such motions, trial courts assume the role of the trier of fact and are best positioned to resolve factual disputes and to evaluate witnesses credibility. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 50; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8. Appellate courts will accept a trial court's factual findings if supported by competent, credible evidence.  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶100; also see *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist. 1996). However, appellate courts will review de novo a trial court's application of the law to those facts. See *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141 (4th Dist.1993); *State v. Angelo*, 3rd Dist. Summit No. 24751, 2009-Ohio- 6966, at ¶7 (Mar. 22, 2000).

{¶ 11} The gist of appellant's arguments in the case sub judice is that Detective Bollinger's affidavit is insufficient to establish probable cause for the issuance of a warrant to search appellant's home.   This is a question of law that we review de novo.

{¶ 12} Our review reveals that Detective Bollinger's affidavit is nearly six pages in length and his paragraphs are detailed and single spaced.  The March 17 and 18 controlled buys from Layman are described in pages four through six.  Page four states that on March 17th, the informant gave Layman $640 in marked money, and there is no mention that Layman immediately gave the informant the drugs.  The affidavit further states that the informant told Layman that "he needs to be quick," to which Layman responded  "you know how Pops is" (presumably in  reference to his father) and then told the informant that appellant previously

"had a seizure and was slow." Bollinger's affidavit also sets forth that Layman did not give the Oxycodone to the informant until after he went to his father's residence, and then returned to his own residence where the informant remained waiting.

{¶ 13} On page five of the affidavit, Detective Bollinger relates the circumstances of the March 18th controlled buy. The affiant makes no mention of the informant immediately giving the buy money to Layman, as was done the day before. Instead, Layman told the informant that his father "ran to WalMart" and Layman "kept looking out the windows of the trailer towards Larry K. Layman's [appellant's] house looking for him to arrive [home]." The affidavit continues that after appellant arrived home, the informant gave Layman the buy money. Layman then went to his father's residence. Another officer also witnessed Layman's visit to his father's residence. Soon, Layman returned and "counted out (10) Oxycodone tablets for the CI."

{¶ 14} In both controlled buys, Detective Bollinger outlined how they searched the informant before and after his visits with Layman. Officers also wired the informant to record his encounters. The affiant attested that those recordings corroborated the informant's statements concerning the events that transpired during his visits with Layman. Layman's many references to the informant about the appellant, as well as several attestations that the informant did not receive Oxycodone until after Layman's visits to his father's home, were used to establish probable cause to believe that appellant actually supplied the drugs that were sold to the confidential informant.

II

{¶ 15} The Fourth Amendment to the United States Constitution states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by Oath or affirmation . . ." The provisions of this amendment were incorporated into the Fourteenth Amendment Due Process Clause and applied to the states. *Smith v. Maryland*, 442 U.S. 735, 736, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Article I, Section 14 of the Ohio Constitution also affords the same protection as the Fourth Amendment. *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio- 6426, 920 N.E.2d 949, ¶10, fn. 1.

{¶ 16} In the case sub judice, the central issue is whether Detective Bollinger's attestations sufficiently established probable cause to issue the search warrant. For the following reasons, we agree with the trial court's conclusion that it did.

{¶ 17} The United States Supreme Court has stated that probable cause is a flexible, common-sense standard. *Florida v. Harris*, ___U.S. ___, 133 S.Ct. 1050, 1056,185 L.Ed.2d 61 (2013); *Texas v, Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); also see e.g. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph one of the syllabus (1989). That standard requires that the facts available to an officer would warrant a person of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand a showing that such a belief be correct or more likely true than false. *Brown*, at 742. Additionally, the test for probable cause is not reducible to a precise definition or degree of quantification. See *Harris*, at 1055; *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). Indeed, probable cause is a fluid concept that turns on the assessment of probabilities in particular factual contexts and is not readily reduced to a neat, orderly set of legal rules. *Pringle*, at 370-371; also see *Ornelas v. United States*, 517 U.S.

690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (Scalia, J. Dissenting). Because of this, in order to determine whether probable cause exists in a particular situation, courts must look to the totality of the circumstances. See *Alabama v. White*, 496 U.S. 325, 328, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), *Illinois v. Gates*, 462 U.S. 213, 230-233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); also see *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, at ¶13.

{¶ 18} After our review of this matter, we readily conclude, as did the trial court, that Detective Bollinger's affidavit satisfies the probable cause standard. Of particular significance is the detail regarding the March 17th & 18th transactions, and although those transactions initially involved the informant and Layman (rather than between the informant and appellant), the information nonetheless shows (1) as to the March 17th drug buy, the informant gave Layman money, but did not receive the drugs until after Layman visited his father's residence; (2) as to the March 18th drug buy, the informant waited until appellant returned to his home before he gave Layman money for the Oxycodone, and again, did not receive the drugs until after Layman visited his father's residence; (3) as to the March 17th buy, when mentioning to Layman the transaction had to be concluded quickly, Layman responded that his father was moving slowly. Obviously, if Layman was the actual supplier, no reason would have existed to mention appellant's availability and to visit appellant's residence.

{¶ 19} Therefore, we believe that Bollinger's attestations are sufficient for any reasonable person to reach the conclusion that appellant probably supplied his son (Layman) with the Oxycodone sold to the informant. Probable cause deals with "probabilities," not certainties. *Cincinnati v. Carroll*, 1st Dist. Hamilton No. C-080160, 2008-Ohio-6832, at ¶4; *State v. Stanley*, 11th Dist. Portage No. 2007–P–0104, 2008-Ohio-3258, at ¶11; *State v. Hodge*, 4th Dist. Adams

No. 456, 1987 WL 16258 (1987). Was it possible that Layman possessed the Oxycodone, accepted the informant's money and decided to visit his father before he gave the drugs to the informant?[5] Perhaps. But was it probable? We think not.

{¶ 20} Although we readily acknowledge that no direct testimony or other evidence established that appellant actually supplied the drugs that his son sold to the informant, we agree with the trial court that the totality of the circumstances of the controlled buys sufficiently establishes probable cause. Moreover, rulings from other jurisdictions support our conclusion in this matter. For example, in *United States v. Pressey*, 674 F.Supp.2d 301 (U.S.D.C. ME.2009), the trial court denied (in part) a motion to suppress evidence on grounds that the traffic between the appellant's home and a known drug-dealer is sufficient for an affidavit to establish probable cause.

{¶ 21} In the case at bar, Detective Bollinger's affidavit was neither "bare bones" (contained mere suspicions or wholly conclusory statements and lacked sufficient facts and circumstances necessary for a magistrate to independently determine probable cause) nor "conclusory" (simply states the affiant's belief that probable cause exists). See e.g. *United States v. DeQuasie*, 373 F.3d 509, 521 (4th Cir.2004); *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir.1998); *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir.1996). To the contrary, we conclude, as did the trial court, that Detective Bollinger's affidavit provided detailed, specific and articulable facts on which a magistrate could justifiably believe that the information established probable cause of the existence of a crime. Thus, we find no error in the trial court's denial of appellant's motion to suppress.

---

[5] This is the course of events that appellant suggested in his various filings.

{¶ 22} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's assignments of error and affirm the trial court's judgment.

<u>JUDGMENT AFFIRMED.</u>

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that the appellee recover of appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.   Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.