[Cite as *State v. McClure*, 2020-Ohio-1574.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 19CA9 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| Kayla R. McClure, | : | |
| Defendant-Appellant. | : | **RELEASED 4/16/2020** |

_____
<u>APPEARANCES</u>:

Lindsey A.B. Price, Price Law Office, Pomeroy, Ohio, for appellant.

James K. Stanley, Meigs County Prosecuting Attorney, Pomeroy, Ohio, for appellee.
_____
Hess, J.

{¶1}   Kayla McClure appeals her conviction, following a no contest plea, for two counts of possession of drugs.  The charges stemmed from an investigatory stop that resulted in the discovery of a folded piece of paper in McClure's pocket that contained heroin and fentanyl.  McClure contends that the trial court erred in denying her motion to suppress because the police lieutenant who conducted the stop violated her constitutional rights by asking her to empty her pockets, conducting a pat-down search, and removing the paper from her pocket.  When the lieutenant asked McClure to empty her pockets and she complied by removing some items, he essentially conducted a warrantless search, and the state has not met its burden to establish that the search was constitutionally permissible.  Information obtained as a result of the search, i.e., McClure's failure to remove the paper which suggested an intent to conceal it, cannot be used to justify its seizure during the subsequent pat-down search.  Even if the pat-

down search was constitutional, the lieutenant lacked probable cause to associate the paper with criminal activity based on the other information he had, so the plain feel exception to the warrant requirement does not apply. Therefore, the court should have suppressed the evidence obtained as a result of the warrantless seizure of the paper. We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## I. FACTS

{¶2} The Meigs County grand jury indicted McClure on two counts of possession of drugs, fifth degree felonies. She pleaded not guilty and moved to suppress the evidence against her.

{¶3} At the suppression hearing, Lieutenant Chris Pitchford of the Middleport Police Department testified that he was on duty on December 14, 2017, and at approximately 1:15 p.m., saw a vehicle travelling the wrong direction on South Third Avenue in Middleport, Ohio. He pulled his cruiser in between the vehicle and oncoming traffic and activated his emergency lights. At some point, the driver of the vehicle, McClure, pulled off to the side of the road. Lieutenant Pitchford turned his cruiser around, stopped behind her vehicle, and approached McClure, who had her child with her.

{¶4} Lieutenant Pitchford described McClure as "agitated," "defiant," "apprehensive," "argumentative," and "obstructive" during the encounter. He asked for her driver's license, registration, and insurance information, and she asked why. He explained the reason he stopped her, and McClure told him that she knew she was driving the wrong way and was trying to meet people at a nearby restaurant. Lieutenant

Pitchford asked for the items again, and McClure asked why she had to give them to him and said that she needed help navigating.  Lieutenant Pitchford said that he would be happy to help once she gave him the items he had asked for and requested them again. McClure hesitated and then gave him her registration, insurance information, and a military ID card. Lieutenant Pitchford told her that the military ID was not an acceptable substitute for a driver's license.  McClure said that she was from California and did not have her driver's license with her.  Lieutenant Pitchford obtained her social security number, ran it through the LEADS system, and learned McClure had an expired Ohio driver's license.  He did not recall receiving any information from California but testified that was "not really unusual" because "[s]ome states don't provide as much information, if any, as others * * *."

{¶5}    Based on the traffic violation and McClure's behavior, Lieutenant Pitchford thought she might be under the influence of drugs.  He asked McClure to get out of the car so he could assess her psychomotor ability and obtain more control over the situation, and he asked her to remove her sunglasses so he could assess her pupils. Once McClure complied, Lieutenant Pitchford observed that her pupils were constricted, which based on his education and training, he knew was a sign of possible opioid use. Her "psychomotor ability was kind of erratic" because she made "excited movements," but Lieutenant Pitchford thought the movements were consistent with her "acting frustrated" and "didn't feel that maybe she was impaired to care for herself at that time." McClure claimed that her pupils were "always constricted," and when Lieutenant Pitchford inquired about whether she had taken any drugs, McClure said she had not. Lieutenant Pitchford asked whether she "had anything illegal on her," and she said she

did not.  Lieutenant Pitchford "asked her if she would empty her pockets."  She removed some objects from her pockets and put them on the hood of her vehicle.

{¶6}    Next, Lieutenant Pitchford told McClure that he was going to pat her down. He wanted to "make sure she didn't have any type of weapons or anything on her because she was out of the vehicle and that's just standard procedure."  Lieutenant Pitchford testified that "anytime we get someone out of a vehicle, it's…it's concerning." However, he did not fear for his safety or believe that McClure's "obstructionist behavior" posed a safety concern.

{¶7}    Lieutenant Pitchford felt a "small object in the right side pocket of her pants."  He testified that "it felt like a small piece of like folded paper.  Um, maybe foil or something like that * * *."  It was "no bigger than a gum wrapper" and folded together like a little pouch.  He did not believe it was a weapon but thought "it was probably some type of contraband specifically drugs" because McClure's behavior and constricted pupils made him "believe that maybe she had been under the influence of opioids," and when he "had asked her to empty her pockets out," she "left that object behind," which led him "to believe that maybe she was leaving that in there to conceal it."  Lieutenant Pitchford knew from his education and experience that people sometimes wrap drugs up "in a piece of paper or a piece of foil" like a gum wrapper or "monetary bill."

{¶8}    Lieutenant Pitchford removed the paper from McClure's pants, and she said, "Shit.  These aren't even my pants."  Lieutenant Pitchford said, "I'm guessing there's some substance in this paper," and McClure said there was. Lieutenant Pitchford testified that he asked McClure for her consent to search the vehicle, which she granted; this search did not reveal additional evidence.  He had McClure drive to

the police station, where he questioned her and gave her a traffic citation for driving the wrong way on a one-way street before letting her leave. He sent the piece of paper for testing, which revealed it contained heroin and fentanyl.

{¶9} The trial court denied the motion to suppress, concluding Lieutenant Pitchford had authority to seize the piece of paper during the pat-down search under the plain feel doctrine. McClure pleaded no contest to the charges, and the court sentenced her to five years of community control.

## II. ASSIGNMENT OF ERROR

{¶10} McClure assigns the following error for our review: "The Trial Court erred in denying the Defendant's Motion to Suppress. This decision is contrary to law and is against the manifest weight of the evidence."

## III. LAW AND ANALYSIS

{¶11} In the sole assignment of error, McClure contends the trial court erred when it denied her motion to suppress. McClure acknowledges that in certain circumstances, an officer may conduct a pat-down search for weapons, and under the plain feel doctrine, an officer may seize an object felt during a pat-down search if its incriminating nature is immediately apparent. However, McClure maintains Lieutenant Pitchford could not order her to empty her pockets instead of conducting a pat-down search and that in complying with his order, she did not voluntarily consent to what amounted to a warrantless search. McClure also asserts that Lieutenant Pitchford could not conduct a pat-down search because he lacked a specific and articulable belief that she was armed and dangerous. Finally, McClure asserts that Lieutenant Pitchford could not seize the piece of paper under the plain feel doctrine because a "significant

basis" for his belief that the paper "contained drugs was the fact that Appellant had left that small object in her pocket AFTER [he] had illegally ordered Appellant to empty her pockets," and the incriminating nature of the paper was not immediately apparent.

{¶12} The state contends that "even if this Court were to find that Lt. Pitchford lacked authority to order Appellant to empty her pockets," "no evidence resulted from Appellant emptying her pockets" that the trial court could suppress. The state asserts that "even if the order for Appellant to empty her own pockets was impermissible," Lieutenant Pitchford could still conduct the pat-down search for weapons and could seize the paper under the plain feel doctrine because based on his experience, he "immediately suspected" that it contained drugs.

{¶13} "Normally, appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The Supreme Court of Ohio has explained:

> "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."

(Citations omitted.) *Id.*, quoting *Burnside* at ¶ 8.

{¶14} "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. The Supreme Court of Ohio has held that these provisions provide the same protection in felony

cases. *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 18. "This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion at trial of evidence obtained from an unreasonable search and seizure." *State v. Petty*, 4th Dist. Washington Nos. 18CA26 & 18CA27, 2019-Ohio-4241, ¶ 11.

**{¶15}** "Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *State v. Eatmon*, 4th Dist. Scioto No. 12CA3498, 2013-Ohio-4812, ¶ 12, citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). " 'Once the defendant demonstrates that he [or she] was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible.' " *Id.*, quoting *State v. Smith*, 4th Dist. Ross No. 12CA3308, 2013-Ohio-114, ¶ 12. In this case, Lieutenant Pitchford acted without a warrant.

**{¶16}** When Lieutenant Pitchford asked McClure to empty her pockets and she complied by removing some items, he essentially conducted a warrantless search. *See generally State v. Bailey*, 4th Dist. Scioto No. 1725, 1989 WL 74861, *5 (June 27, 1989) ("The fact that appellant was instructed to empty his pockets constituted, constitutionally, a search in the same manner as if the officer had removed the cocaine"). Although the drugs were not among the items McClure removed from her pockets, Lieutenant Pitchford used information obtained from the search to justify his warrantless seizure of the paper under the plain feel doctrine, i.e., the fact that McClure did not remove the paper herself suggesting an intent to conceal it. The state has the burden to show that the search was constitutionally permissible, *Eatmon* at ¶ 12, but

does not assert any justification for it, such as that McClure voluntarily consented to removing items from her pockets. As McClure points out, even if Lieutenant Pitchford had authority to conduct a pat-down search for weapons, "[a] police officer may not order a suspect to empty his pockets instead of a pat-down." *State v. Debrossard*, 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, ¶ 30, quoting Katz, *Ohio Arrest, Search and Seizure*, Section 16.1 (2013 Ed.). " 'Evidence secured when defendants are not frisked but ordered to empty their pockets will not be admissible when the only authority is a search for weapons * * *.' " *Id.*, quoting *Ohio Arrest, Search and Seizure* at Section 16.3. Thus, the information Lieutenant Pitchford obtained when he asked McClure to empty her pockets cannot be considered in a plain feel analysis.

{¶17} Even if Lieutenant Pitchford had authority to conduct the pat-down search for weapons, the plain feel doctrine does not justify his warrantless seizure of the paper. " '[I]f in the process of conducting a limited pat down search for weapons an officer detects an object whose criminal character is immediately apparent to him, he is justified in seizing the object from the * * * person being searched.' " (Omission sic.) *State v. Fowler*, 4th Dist. Ross. No 17CA3599, 2018-Ohio-241, ¶ 17, quoting *State v. Crayton*, 2017-Ohio-705, 86 N.E.3d 77, ¶ 29 (11th Dist.). " ' "In the context of the plain feel exception to the warrant requirement, 'immediately apparent' is a term of art—it simply means the officer has probable cause to associate the object with criminal activity." ' " *State v. Nolen*, 4th Dist. Scioto No. 19CA3873, 2020-Ohio-118, ¶ 40, quoting *State v. Williams*, 4th Dist. Ross No. 10CA3162, 2011-Ohio-763, ¶ 15, quoting *State v. Hansard*, 4th Dist. Scioto No. 07CA3177, 2008-Ohio-3349, ¶ 31. Probable cause is a " 'flexible, common-sense standard.' " *Florida v. Harris*, 568 U.S. 237, 240,

133 S.Ct. 1050, 185 L.E.2d 61 (2013), quoting *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.E.2d 527 (1983). "That standard requires that the facts available to an officer would warrant a person of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand a showing that such a belief be correct or more likely true than false." *State v. Layman*, 4th Dist. Lawrence No. 14CA35, 2016-Ohio-1503, ¶ 17, citing *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.E.2d 502 (1983) (plurality opinion). "In determining whether probable cause existed, courts must consider ' "the totality of the facts and circumstances, including a police officer's specialized knowledge." ' " *Nolen* at ¶ 39, quoting *Williams* at ¶ 16, quoting *Hansard* at ¶ 35.

{¶18} A person of reasonable caution would not have been warranted in the belief that the folded piece of paper contained contraband under the totality of the facts and circumstances in this case. Although Lieutenant Pitchford testified that he suspected McClure had taken an opioid and had specialized knowledge that people sometimes carry drugs in a folded piece of paper, Lieutenant Pitchford did not testify whether he actually felt anything inside the paper during the pat-down search or testify to any other information he legally obtained that would suggest that it contained contraband. As McClure points out, there are numerous innocuous reasons a person might have a piece of paper in his or her pocket.

{¶19} The state failed in its burden to show that the warrantless seizure of the paper was constitutionally permissible under the plain feel doctrine and does not assert any other justification for the seizure. Accordingly, we conclude that the seizure was unconstitutional and that the trial court should have suppressed the evidence obtained

as a result of it. We sustain the sole assignment of error, reverse the trial court's

judgment, and remand for further proceedings consistent with this opinion.

JUDGMENT REVERSED
AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED. Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
      Michael D. Hess, Judge



## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**