OPINION
{¶ 1} This appeal stems from a November 23, 2005 judgment entry where the Lake County Court of Common Pleas granted the motion to suppress of appellee, Edward L. Brooks, Jr. Subsequent to that, appellant, the state of Ohio, filed a timely notice of appeal.
 {¶ 2} Appellee was indicted on August 3, 2005, by the Lake County Grand Jury on five counts: count one, trafficking in cocaine, a felony of the first degree, in violation of R.C. 2925.03(A)(2), with both a major drug offender and firearm specification; count two, possession of cocaine, a felony of the first degree, in violation of R.C. 2925.11, with both a major drug offender and firearm specification; count three, possession of cocaine, a felony of the fifth degree, in violation of R.C. 2925.11, with a firearm specification; count four, having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2); and count five, possessing criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24. Appellee waived his right to be present at his arraignment, and entered a not guilty plea to all counts.
 {¶ 3} On November 10, 2005, appellee filed a motion to suppress, claiming that the state's evidence was obtained in violation of hisFourth Amendment right to be free from unreasonable search and seizures under the United States and Ohio Constitutions.[1] An evidentiary hearing was held on the matter that same day.
 {¶ 4} The following evidence was presented at the suppression hearing:
 {¶ 5} Officer Shawn Parker ("Officer Parker") of the Village of Kirtland Hills Police Department testified for appellant. He stated that on March 14, 2005, he was on routine patrol on I-90. He turned around at the 193 crossover. He remained in the median until the traffic cleared. He then pulled out onto the highway behind a white Dodge Neon. Almost immediately, the operator of the vehicle looked in his rearview mirror, signaled that he was changing lanes, and quickly moved into the slow lane.
 {¶ 6} Officer Parker followed them into the slow lane. He then stated that the vehicle exited the highway at the Route 615 Center Street exit. The vehicle traveled up the ramp, and made a right hand turn. At that point, when he was "right behind the vehicle[,]" he observed that the rear license plate bracket "made it impossible to see the county and validation, the expiration date on the license plate."
 {¶ 7} The vehicle continued to travel southbound "on Center Street to Chillicothe Road and then made a right-hand turn on Chillicothe heading south, the vehicle was eastbound westbound headed to, to be west." He then explained, "I found that suspicious and decided to stopped [sic] the vehicle. Also observed that the passenger in the vehicle, front seat passenger wasn't wearing a seat belt, activated the emergency overhead lights on the vehicle and the vehicle pulled in a driveway."
 {¶ 8} He then approached the passenger side of the vehicle and noticed that appellee, the passenger of the vehicle, was "still not wearing his seat belt at that point." He informed the driver of why he was stopped, that the bracket on the rear license plate was obstructing his plate. Appellee then stated that the vehicle was a rental car. Officer Parker asked the driver for his license, but he did not have it. However, appellee had his license.
 {¶ 9} Officer Parker then asked them where they were going and they told him that they were going to New York. He did not understand why they were headed west if they were going to New York. They said that they were trying to get gas. However, Officer Parker noticed that the gas gauge was over half a tank and they had just passed an exit where there are several gas stations about two miles back. He further indicated that at the exit they got off, there were no gas stations or even businesses near the exit. These facts struck him as being very suspicious. Further making him suspicious was the fact that the driver appeared nervous, did not have a driver's license, and the passenger was answering all the questions that he was directing to the driver.
 {¶ 10} Officer Parker discovered that the driver had misdemeanor warrants and his driver's license was expired. Officer Parker also asked them to see the insurance on the vehicle. He indicated that appellee reminded him again that the car was a rental and handed him the rental paperwork. The car was rented from the Mansfield area by Ollie Brooks, appellee's mother. Appellee was a secondary renter. Officer Parker noticed that the mileage on the rental paperwork was 20,000 miles. The mileage on the car at the time of the stop was 22,000. He asked them again where they were going, and they stated that they were going to see appellee's mother who was in the hospital. Officer Parker explained that based on the amount of mileage put on the car in two days, the fact that the person who rented the car was not present, appellee saying that his mother had rented the car two days ago in Mansfield, but now she was in a hospital in New York, all those stories together contributed to a typical drug carrier profile.
 {¶ 11} Officer Parker asked the driver and appellee to get out of the vehicle one at a time. When appellee stepped out, Officer Parker observed a knit stocking cap on his seat and steel wool sticking out of the cap. Steel wool is used to filter crack cocaine. At that point, Officer Parker asked appellee if there was anything in the car that he needed to be aware of, and appellee told him no. He then asked appellee if he could "take a look," and appellee said that he could.
 {¶ 12} Upon an initial search of the car, Officer Parker found a burnt ball of steel wool, a metal pipe with steel wool stuffed in the end of it, with what appeared to be crack residue on the end of the pipe as well, and a very small cellophane baggie with a couple of rocks in it, which appeared to be crack cocaine. Both the driver and appellee denied it was theirs. Officer Parker then placed them both under arrest and read them their Miranda rights.
 {¶ 13} After arresting both men, Officer Parker continued searching the vehicle. There was a heavy package in the back. The package had cocaine in it.[2]
 {¶ 14} On cross-examination, Officer Parker indicated that his suspicion was first aroused by the "speed in which they changed lanes[.]" He admitted, however, that they did not commit a traffic violation in doing so, nor did they commit any other traffic or freeway violation, besides the license plate and seat belt violations.
 {¶ 15} Officer Parker said that he first observed the seat belt violation when he was following the vehicle on Chillicothe Road, but later conceded that he could not recall when he first noticed it. He agreed, however, that on his incident report, he had noted that he did not observe that appellee did not have a seat belt on until he approached the vehicle, after they were stopped. He also admitted that although he did not recall seeing a seatbelt on appellee prior to getting out of his car, that it was possible that appellee could have taken his seatbelt off after they had stopped.
 {¶ 16} Defense counsel showed Officer Parker a photograph of a license plate. He agreed that the photograph was similar to the license plate on March 14, 2005. He testified, however, that he could not remember exactly what it looked like on that day.
 {¶ 17} On re-direct examination, Officer Parker clarified that he did not take the photograph of the rental car's license plate. He also explained that once they got back to the police station, they continued to search the car. They removed the license plate from the vehicle to make sure that there was nothing hidden behind it. Afterwards, they put it back on the car.
 {¶ 18} On re-cross examination, Officer Parker agreed, when shown the photograph again, that he could partially read the numbers on the photograph of the license plate, but reiterated, that he could not read them at all when he was on the road. However, he said he did not have any reason to doubt the photo's accuracy. He admitted that there were two screws in the license plate in the photo.
 {¶ 19} Appellee took the stand next. He stated that he had his seat belt on and did not take it off until they stopped and the car was in park. He then identified the photograph of the license plate on the rental car. He related that the photograph was taken the day after they got the car out of impound, but that it fairly and accurately depicted the license on March 14, 2005. He also testified that he never gave Officer Parker consent to search the vehicle.
 {¶ 20} On November 23, 2005, the trial court granted appellee's motion to suppress. In granting the motion, the trial court concluded that, "the officer may have had suspicions and he may have found elements of a drug profile, but based on what he observed and was able to articulate, these do not rise to the level of probable cause." On November 30, 2006, upon this court's own motion, in which this writer did not participate, the matter was remanded to the trial court for it to review the evidence adduced at the hearing and determine whether the suspicions articulated by the officer met the standard of reasonable suspicion to justify an investigatory stop.
 {¶ 21} In a December 5, 2006 judgment entry, the trial court determined that the officer had neither probable cause, nor reasonable suspicion, to justify a constitutional investigatory stop.
 {¶ 22} Appellant appealed from the November 23, 2005 judgment entry, raising the following sole assignment of error:
 {¶ 23} "The trial court erred in suppressing evidence obtained following the stop of a motor vehicle found in violation of [R.C.] 4503.21."
 {¶ 24} Appellant presents two issues for our review. First, that the trial court's findings of fact at the suppression hearing are against the manifest weight of the evidence, and second, that the trial court failed to apply the correct legal standard to its findings of fact.
 {¶ 25} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366; State v. Smith (1991), 61 Ohio St.3d 284, 288. On review, an appellate court must accept the trial court's findings of fact if they are supported by some competent and credible evidence.State v. Retherford (1994), 93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must then independently determine, as a matter of law, whether the applicable legal standard has been met. Id. See, also, State v. Swank (Mar. 22, 2002), 11th Dist. No. 2001-L-054, 2002 Ohio App. LEXIS 1345, at 7-8.
 {¶ 26} In its first issue presented for review, appellant contends that the trial court made erroneous findings of fact with respect to the officer's actions prior to the stop; the reliability of the photographic evidence admitted; and the officer's ability to read the license plate despite the obstruction.
 {¶ 27} Appellant maintains that the trial court's finding that, "[t]he arresting officer was parked in the median monitoring traffic. The officer observed the vehicle pass and noted that the tags on the license plate were obscured. The officer pulled onto Rt. 90 and followed the vehicle[,]" was erroneous. We agree with appellant that Officer Parker was not "monitoring traffic" when he was in the median. His testimony showed that he was in the median after he made a turn, and was waiting for traffic to dissipate before he pulled back onto the highway. We also agree with appellant that Officer Parker noticed the car first after it made a quick lane change, and it was not until he followed the vehicle onto the exit ramp when he claimed he saw that the tags were obscured, and not when the vehicle passed him. However, we fail to see how these errors are significant in the granting of appellee's motion to suppress, and as such, conclude that these errors are harmless.
 {¶ 28} Appellant further challenges the trial court's findings with respect to the license plate. He argues that the trial court erroneously concluded that the officer should have been able to read the tags, as well as its finding that the license plate had to be in the same configuration it was when the officer saw it, ultimately determining from the picture that only one-quarter of the tags were obstructed.
 {¶ 29} After reviewing the record and testimony, however, we conclude the trial court was in the best position to weigh the evidence and determine credibility. The trial court's findings were supported by competent, credible evidence, and as such, appellant's assertions lack merit. Therefore, our focus in this matter is on appellant's second issue presented; i.e., whether, in light of the facts, the trial court was correct in its determination that Officer Parker did not have probable cause to make the initial stop.
 {¶ 30} "The Fourth Amendment of the United States Constitution, as well as Article One, Section Fourteen, of the Ohio Constitution, guarantee `the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' When a police officer stops an automobile and detains its occupants, a `seizure' is committed within the meaning of the Fourth andFourteenth Amendments of the United States Constitution." State v. Wojtaszek, 11th Dist. No. 2002-L-016, 2003-Ohio-2105, at ¶ 15, citing Delaware v.Prouse (1979), 440 U.S. 648, paragraph two of the syllabus.
 {¶ 31} "A stop is constitutional if it is supported by either a reasonable suspicion or probable cause." State v. Molek, 11th Dist. No. 2001-P-0147, 2002-Ohio-7159, at ¶ 25. In order to make an investigative stop within constitutional parameters, a police officer must be able to cite articulable facts that give rise to reasonable suspicion of criminal behavior. Terry v. Ohio (1968), 392 U.S. 1,21. "The test for probable cause is: `whether at the moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.[']"Molek, supra, at ¶ 25, citing Beck v. Ohio (1964), 379 U.S. 89, 91.
 {¶ 32} "It is well established that an officer may stop a motorist upon his or her observation that the vehicle in question violated a traffic law." State v. Boczar, 11th Dist. No. 2004-A-0063,2005-Ohio-6910, at ¶ 11, citing Dayton v. Erickson (1996),76 Ohio St.3d 3, 11-12. Moreover, this court has repeatedly held that when a police officer witnesses a minor traffic violation, he or she is warranted in making a stop to issue a citation. Village of Waite Hill v.Popovich, 11th Dist. No. 2001-L-227, 2003-Ohio-1587, at1J14.
 {¶ 33} Thus, appellant is correct that an officer's observation of a violation of R.C. 4503.21 provides probable cause to make an initial traffic stop. Molek at ¶ 25. The question in this case then turns upon whether the license plate was obstructed in violation of R.C.4503.21.[3] If so, then Officer Parker had probable cause to make the initial stop.
 {¶ 34} The trial court found that the stickers on the license plate were partially obstructed: "[l]ess than one-quarter of the tags were covered by the frame[.]" Therefore, applying that finding to the applicable law, the issue then becomes, as argued by appellant, whether R.C. 4503.21 strictly prohibits any obstruction.
 {¶ 35} R.C. 4503.21(A) provides that "[n]o person * * * shall fail to display in plain view * * * the distinctive number and registration mark, including any county identification sticker and any validation sticker[.] * * * All license plates shall be securely fastened so as not to swing, and shall not be covered by any material that obstructs their visibility." The intent of the statute is to "require that license plates be visible to law enforcement personnel and others who may have reason to note the number for identification purposes." State v.Durfee (Mar. 6, 1998), 11th Dist. No. 96-L-198 and 96-L-199, 1998 Ohio App. LEXIS 865, at 8.
 {¶ 36} Appellant contends that "plain view," and shall "not be covered by any material that obstruct their visibility[,]" show that the R.C.4503.21 strictly prohibits any obstruction. (Emphasis sic.) We disagree. Even taking appellant's definition of obstruct, "which is defined as to block, hinder, or cut off from sight[,]" it does not support his proposition that the statute prohibits any obstruction. We interpret that to mean that if the visibility is obstructed, then the numbers would be blocked out of sight; i.e., one would not be able to read them at all. That is not the case here. According to the trial court's findings, seventy-five percent of the tags were visible. As such, we cannot say that the frame obstructed the visibility of the tags.
 {¶ 37} Other appellate courts have defined "plain view." One court defined it as "[t]he common sense definition of `plain view' * * * contemplates actually being able to read the letters and numbers on the license plate." State v. Hanna (Mar. 10, 2000), 6th Dist. No. WM-99-016, 2000 Ohio App. LEXIS 879, at 7. Another court held that "the unreadable nature of the license plate and the validation sticker constituted a violation of R.C. 4503.21." State v. Warner (July 6, 1998), 4th Dist. No. 97 CA 943, 1998 Ohio App. LEXIS 3337, at 9. Those courts seem to emphasize that if the numbers are not readable, then it would be a violation. Here, accepting the trial court's fact conclusion that the picture of the license plate depicted the way it appeared on March 12, 2005, Officer Parker could read the numbers, as he did at the suppression hearing.
 {¶ 38} Finally, in its brief, appellant cited ten cases for the proposition that, "numerous appellate districts have found even partial obstruction of any part of a vehicle's license plate, including the county identification sticker and validation sticker, constitutes a traffic violation giving rise to probable cause to stop." However, in nine of the ten cases, that is not what the court held. Moreover, in nine of the ten cases, the facts are entirely distinguishable.[4]
 {¶ 39} Accordingly, we conclude that the trial court did not err in applying the facts to the applicable law in this case. Officer Parker did not have probable cause to stop the vehicle, and therefore, the trial court properly granted appellee's motion to suppress. We note that we further agree with the trial court's apt comment that, "[i]f police were allowed to stop any vehicle on the road having frames which touch the license tags, many innocent citizens would be stopped and their vehicles ultimately searched."
 {¶ 40} As such, we conclude that appellant's sole assignment of error lacks merit. The judgment of the Lake County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, J., concurs,
[1] In his motion to suppress, appellee only argued that the initial stop was not supported by probable cause. Appellee conceded that the events after the initial stop were sufficient to give rise to reasonable suspicion to search the vehicle.
[2] The transcript is not clear regarding the amount of cocaine found. However, appellee was charged with trafficking in cocaine and possession of cocaine, the amount of cocaine in both counts equaling 4,995 grams.
[3] In his motion to suppress, appellee did not argue that Officer Parker did not have reasonable suspicion to make the initial stop. On appeal, appellant, in its discretion, did not argue alternatively that Officer Parker articulated sufficient facts to give rise to reasonable suspicion to make the initial stop.
[4] In three of the cases, the statute was similar to R.C. 4503.21, however it was more stringent, with the added language: to "be readable in its entirety from left to right." State v. Keathley (1988),55 Ohio App.3d 130, 131 (2d Dist); Fairfieldv. Stephens, 12th Dist. No. CA2001-06-149, 2002-OhiO-4120, at 112; Cleveland v. Maxwell, 8th Dist. No. 84365, 2004-Ohio-6098, at ¶ 2, fn. 1. In one case, the license plate did not have a county registration sticker. State v. Tolbert (Mar. 18, 2002), 12th Dist. No. CA2001-05-012, 2002 Ohio App. LEXIS 1330, at 4. In four of the other cases, the license plate was so dirty or rusty that it was not readable. State v. Rose (June 14, 1993), 2d Dist. No. 2960, 1993 Ohio App. LEXIS 3047, at 2; Warner, supra, at 2; State v.Lavalette, 6th Dist. No. WD-02-025, 2003-Ohio-1997, at ¶ 2-3; State v.Snyder, 4th Dist. No. 02CA575, 2003-Ohio-2039, at ¶ 2. In the final case that is distinguishable, two of the numbers on the license plate were completely obstructed by a ball hitch. State v. Small (Sept. 27, 2000), 5th Dist. No. 99COA01339, 2000 Ohio App. LEXIS 4599, at 5. The only case on point was a recent case by the 8th Dist, State v. Robinson, 8th Dist. No. 85149, 2005-Ohio-2834, which held that the bracket partially obscured a required state sticker, and thus, was a traffic violation justifying the stop. Id. at ¶ 30. However, we decline to follow the Eighth District on the facts in this case.