[Cite as *State v. Thomas*, 2024-Ohio-5872.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2024-L-049** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| DIMITRE M. THOMAS, | |
| Defendant-Appellant. | Trial Court No. 2023 CR 000993 |

**O P I N I O N**

Decided: December 16, 2024
Judgment: Affirmed

---

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Jamie R. Eck*, Assistant Public Defender, 100 West Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Dimitrie[1] M. Thomas, appeals the denial of his Motion to Suppress in the Lake County Court of Common Pleas. For the following reasons, we affirm the decision of the court below.

{¶2} On January 2, 2024, the Lake County Grand Jury returned an Indictment charging Thomas with the following: Operating a Vehicle Under the Influence of Alcohol, a Drug of Abuse, or a Combination of Them (Count 1), a misdemeanor of the first degree

---

1. At sentencing, the prosecutor advised the trial court: "[T]he defendant's name is spelled wrong in the indictment because it was spelled wrong in the police report so I just wanted to amend the name in the indictment so it's spelled correctly. In the indictment it's spelled D-i-m-i-t-r-e and it should be D-i-m-i-t-r-i-e which is correct in his LEADS."

in violation of R.C. 4511.19(A)(1)(a); Operating a Vehicle Under the Influence of Alcohol, a Drug of Abuse, or a Combination of Them (Count 2), a misdemeanor of the first degree in violation of R.C. 4511.19(A)(2); Aggravated Possession of Drugs (Count 3), a felony of the third degree in violation of R.C. 2925.11; Possession of Cocaine (Count 4), a felony of the fifth degree in violation of R.C. 2925.11; and Possession of a Fentanyl-Related Compound (Count 5), a felony of the fourth degree in violation of R.C. 2925.11. Counts 3-5 contained Forfeiture Specifications pursuant to R.C. 2941.1417 and 2981.04.

{¶3} On April 3, 2024, Thomas filed a Motion to Suppress.

{¶4} On April 30, 2024, a suppression hearing was held and the Motion denied.

{¶5} On May 7, 2024, Thomas pled "no contest" to the charges and specifications in the Indictment.

{¶6} On June 3, 2024, the sentencing hearing was held. Counts 1 and 2 merged and the State elected to proceed on Count 1. The trial court ordered Thomas to serve a jail term of one hundred eighty days in the Lake County Jail on Count 1, thirty-six months in prison on Count 3, twelve months in prison on Count 4, and eighteen months in prison on Count 5. The court ordered Counts 1, 3, 4 and 5 to be served concurrently with each other for a total of thirty-six months in prison.

{¶7} On July 3, 2024, Thomas filed a Notice of Appeal. On appeal, he raises the following assignment of error: "The trial court erred by denying the defendant-appellant's Motion to Suppress in violation of his due process rights and rights against unreasonable search and seizure and unlawful arrest as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 14 of the Ohio Constitution."

{¶8} "Appellate review of a motion to suppress presents a mixed question of law

Case No. 2024-L-049

and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* "Accepting these facts as true, the appellate court must then independently [i.e., de novo] determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶9} The trial court made the following determinations following the suppression hearing:

> The only witness presented was Patrolman Steven Govedich ("Ptl. Govedich"), who has been a police officer since 2010 and with the Mentor Police Department since 2015. Ptl. Govedich testified that he was stationed near State Route 306 and Route 2 on August 1, 2023 after 2 a.m. when he saw a silver Buick Rendezvous ("Vehicle") with a license plate cover that made it impossible to read the license plate or even to determine whether there was a plate, even though there were street lights illuminating the vehicle, there were no interfering weather conditions, and he has 20/20 eyesight. Ptl. Govedich drove onto Route 306 and pulled behind the Vehicle but still could not read the plate. At that point he initiated a traffic stop, and when he approached the Vehicle on foot and was approximately 10-15 feet behind it he could read the license plate and called it in. He then walked up to the passenger's side of the Vehicle, where the window was rolled down and he "immediately" smelled the strong odor of raw marijuana. Defendant was the only person in the Vehicle. Ptl. Govedich asked Defendant about the license plate cover, and Defendant showed signs of impairment (including pinpoint pupils and sweating even though it was only 64 degrees out). When asked for his driver's license Defendant handed Ptl. Govedich a State ID card instead, which indicated to Ptl. Govedich that Defendant's license was suspended. During the first four to five minutes of the stop Ptl. Govedich did not tell Defendant that he smelled a raw odor of marijuana, although he did write that in his report.
>
> …
>
> Here, the court finds Ptl. Govedich's testimony credible that

3

he could not read the Vehicle's license plate when Defendant first drove past him, that he pulled onto 306 South behind the Vehicle and still could not read the license plate (even with binoculars), and that he had a reasonable belief that this was a violation of R.C. 4503.21 and the related Mentor ordinance. The court further finds Ptl. Govedich's testimony credible that when he was approximately 10-15 feet from the Vehicle (on foot) he could read the license plate, but still reasonably believed that there was a violation of R.C. 4503.21 and the Mentor ordinance, and that he approached the Vehicle in order to write a ticket. The court also finds Ptl. Govedich's testimony credible that when he came to the passenger's side window he immediately smelled the strong odor of raw marijuana, and that he chose not to announce that to Defendant while he waited for backup.

As a matter of law, the court finds that Ptl. Govedich's reasonable belief that Defendant violated R.C. 4503.21 and the related Mentor ordinance because the license plate cover obscured the license plate from view until he approached it on foot was sufficient for the officer to conduct an investigative stop. The court further finds that Defendant did in fact violate R.C. 4503.21 and the related Mentor ordinance for the same reason. Finally, the court finds that the strong odor of raw marijuana was a sufficient basis to prolong the stop, and then Defendant's lack of a driver's license was a sufficient basis to further prolong the stop.

{¶10} Thomas raises two arguments. First, "the police officer who stopped his car did so without the requisite reasonable and articulable suspicion that he was operating his car in violation of the law." Second, "after the initial traffic stop took place, Officer Govedich unlawfully detained him and his vehicle." Brief of Defendant-Appellant at 3.

{¶11} "It is well settled that 'any traffic violation, even a minor traffic violation, witnessed by a police officer is, standing alone, sufficient grounds to stop the vehicle observed violating the ordinance.'" (Citation omitted.) *State v. Hobbs*, 2024-Ohio-2601, ¶ 14 (11th Dist.); *Dayton v. Erickson*, 76 Ohio St.3d 3, 11 (1996) ("where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution"). Thus, "if an officer's decision to stop a motorist for a criminal violation,

4

Case No. 2024-L-049

including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *State v. Mays*, 2008-Ohio-4539, ¶ 8.

{¶12} Revised Code 4503.21(A)(1) and (2) provides, in relevant part: "No person who is the owner or operator of a motor vehicle shall fail to display in plain view on the rear of the motor vehicle a license plate that displays the distinctive number and registration mark assigned to the motor vehicle by the director of public safety, including any county identification sticker and any validation sticker when required by and issued under sections 4503.19 and 4503.191 of the Revised Code. … The license plate … shall not be covered by any material that obstructs its visibility." This court has stated that "[t]he intent of the law is to require that license plates be visible to law enforcement personnel and others who may have reason to note the number for identification purposes." *State v. Anderson*, 2018-Ohio-2455, ¶ 18 (11th Dist.).

{¶13} Thomas' initial argument is that, regardless of whether Patrolman Govedich could read his license plate from the police cruiser, he was able to read it as he approached Thomas' vehicle on foot. "Mr. Thomas contends that at that point in time his back license plate was not obstructed within the meaning of Ohio Revised Code 4503.21," and, consequently, "Ptl. Govedich lacked a reasonable and articulable suspicion to believe that … Mr. Thomas was operating his car in violation of the law." Brief of Defendant-Appellant at 6. We disagree.

{¶14} At the point in time that Patrolman Govedich approached Thomas' vehicle on foot and could read the license plate, the stop (or seizure) had already been effected. The determinative issue is whether Govedich could read the plate prior to effecting the stop and approaching on foot. Govedich testified, and the trial court found as a factual

5

Case No. 2024-L-049

matter, that he could not do so even with binoculars and even when directly behind Thomas' vehicle. For the purposes of effecting a valid stop, the issue whether Thomas had in fact violated R.C. 4503.21 is neither determinative nor relevant. Rather, the issue is whether Govedich had probable cause to believe that he had done so. *Bowling Green v. Godwin*, 2006-Ohio-3563, ¶ 15 ("[p]robable cause does not require the officer to correctly predict that a conviction will result").

{¶15} In support of his position, Thomas cites *State v. Brooks*, 2007-Ohio-344 (11th Dist.), and *State v. Brown*, 2020-Ohio-896 (1st Dist.). Both cases are distinguishable. In *Brooks*, this court upheld the suppression of a stop based on a purported violation of R.C. 4503.21 where the trial court found that the plate's stickers were partially obstructed ("[l]ess than one-quarter of the tags were covered by the frame") but that the numbers on the plate were readable. *Brooks* at ¶ 34 and 37. In the present case, the plate did not become readable (or even observable) until after the stop. In *Brown*, the First District upheld the suppression of a stop based on R.C. 4503.21 where, as in *Brooks*, the license plate was legible to the officer before the stop was effected. *Brown* at ¶ 16 ("according to Kemper's own testimony, he could clearly read all of the relevant information on Brown's license plate while stopped behind him at the traffic light"); *compare Brooks* at ¶ 37 (recognizing that other courts "seem to emphasize that if the numbers are not readable, then it would be a violation"). Accordingly, neither of these cases contradict the validity of the stop in the present case.

{¶16} Thomas' second argument is that, "[o]nce Ptl. Govedich was able to read the characters on the back license plate of Mr. Thomas's vehicle, the basis for stopping Mr. Thomas's vehicle ceased to exist and as such the stop should have been terminated." Brief of Defendant-Appellant at 8.

6

{¶17} We note, initially, that the trial court held that Thomas "did in fact violate R.C. 4503.21," which, if true, undermines his argument. However, Thomas was neither charged nor convicted of violating R.C. 4503.21. At best, the trial court's statement could be construed as meaning that, even after being able to read the license, Patrolman Govedich continued to possess a reasonable suspicion that Thomas was in violation of the statute. *See Godwin*, 2006-Ohio-3563, at ¶ 15 ("We agree with the sentiment expressed in a federal case involving an officer who had stopped a vehicle based on the mistaken belief that the windows were tinted darker than the law permitted. The court observed that the officer 'was not taking the bar exam. The issue is not how well [the officer] understood California's window tinting laws, but whether he had objective, probable cause to believe that these windows were, in fact, in violation.' *United States v. Wallace* (C.A.9, 2000), 213 F.3d 1216, 1220."). However, we need not resolve the issue of whether Thomas was in violation of R.C. 4503.21 or whether Govedich continued to have a reasonable suspicion of such a violation after approaching the vehicle. The Ohio Supreme Court has recently made clear that, after initiating a lawful stop, an officer may approach the driver of the vehicle even where there are no longer grounds for suspicion.

{¶18} Thomas's argument rests on the Ohio Supreme Court's decision in *State v. Chatton*, 11 Ohio St.3d 59 (1984), and appellate court decisions relying on *Chatton*. In *Chatton*, the court held that, "where a police officer stops a motor vehicle which displays neither front nor rear license plates, but upon approaching the stopped vehicle observes a temporary tag which is visible through the rear windshield, the driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable." *Id.* at 63.

{¶19} In *State v. Dunlap*, 2024-Ohio-4821, the Ohio Supreme Court recognized

7

that the holding of *Chatton* has been limited by the subsequent decision of the United States Supreme Court in *Rodriguez v. United States*, 575 U.S. 348 (2015):

> In *Rodriguez*, an officer detained a driver after completing a traffic stop in order to conduct a canine search of his vehicle. *Id.* at 348. The court held that absent reasonable suspicion, police may not extend an otherwise completed traffic stop to conduct a dog sniff. *Id.* at 355. Importantly, though, the court held that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, . . . and attend to related safety concerns." (Citation omitted.) *Id.* at 354, quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). The court explained that "[b]eyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Id.* at 355, quoting *Caballes* at 408. "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* Actions outside the mission would cause the stop to become unlawful if they "'measurably extend the duration of the stop,'" *id.*, quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

*Id.* at ¶ 19.

{¶20} Approaching the driver of a vehicle to advise him of the reason for the stop is just as much an ordinary inquiry incident to the stop as checking the driver's license or inspecting the registration and proof of insurance. The Ohio Supreme Court in *Dunlap* stated expressly that, "[t]o the extent that *Chatton* could be read to suggest otherwise, it has been superseded by the United States Supreme Court's decision in *Rodriguez*." *Id.* at ¶ 29 (the United States Supreme Court "has made it clear that once a police officer has lawfully initiated a traffic stop, the mission of the stop includes asking the driver for a driver's license"); *compare Chatton* at 63 ("[a]lthough the police officer, as a matter of courtesy, could have explained to appellee the reason he was initially detained, the police officer could not unite the search to this detention, and appellee should have been free to continue on his way without having to produce his driver's license").

8

{¶21} In the present case, Patrolman Govedich gained additional suspicion of criminal activity from the smell of raw marijuana upon approaching the vehicle, compounded by indications that Thomas was impaired and his failure to produce a driver's license. Having determined, pursuant to *Dunlap*, that Govedich was not required to terminate the stop immediately upon being able to read the license plate, Thomas' continued detention was justified by these additional circumstances. *See, e.g., State v. Moore*, 90 Ohio St.3d 47, 51 (2000) ("[t]he odor of marijuana was a reasonable ground for Sergeant Greene to believe that defendant was guilty of a drug-related criminal offense," and, "[t]herefore, … Sergeant Greene had sufficient probable cause to conduct a search"); *State v. Tomlin*, 2024-Ohio-4710, ¶ 25 (2d Dist.) ("Tomlin's continued detention was justified not only because he had failed to produce an operator's license, but also because Tpr. Lawson had detected the odor of marijuana in the vehicle").

{¶22} The sole assignment of error is without merit.

{¶23} For the foregoing reasons, we affirm the denial of Thomas' Motion to Suppress. Costs to be taxed against the appellant.


EUGENE A. LUCCI, P.J.,

JOHN J. EKLUND, J.,

concur.

9

Case No. 2024-L-049