[Cite as *State v. Arnold*, 2026-Ohio-998.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

State of Ohio,                              :          Case No.   25CA24

    Plaintiff-Appellee,              :          <u>DECISION AND</u>
                                    <u>JUDGMENT ENTRY</u>

    v.                                        :

Misty Lynn Arnold,                     :          **RELEASED 3/19/2026**

    Defendant-Appellant.          :

_____
<u>APPEARANCES</u>:

Katherine Ross-Kinzie, Supervising Attorney, Appeals and Postconviction Department, Office of the Ohio Public Defender, Columbus, Ohio, for appellant.

Andrew Anastasi, Assistant Law Director, Chillicothe, Ohio, for appellee.
_____
Hess, J.

{¶1}   Misty Lynn Arnold appeals from a judgment of the Chillicothe Municipal Court convicting her, following a no contest plea, of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them ("OVI").  Arnold presents one assignment of error asserting that the trial court erred by denying her motion to suppress evidence that was discovered from an unlawful traffic stop.  For the reasons which follow, we overrule the assignment of error and affirm the trial court's judgment.

I.  FACTS AND PROCEDURAL HISTORY

{¶2}   In January 2025, Arnold was cited for OVI in violation of R.C. 4511.19(A)(1)(a), OVI in violation of R.C. 4511.19(A)(2), driving under financial

responsibility law suspension in violation of R.C. 4510.16, and a display of license plate violation under R.C. 4503.21. She initially pleaded not guilty and filed a motion to suppress challenging the lawfulness of the traffic stop, and by extension, evidence obtained because of the stop.

{¶3}   At the suppression hearing, Trooper Dalton Chaffin of the Ohio State Highway Patrol testified that on January 26, 2025, he was on routine patrol in a marked cruiser when he observed Arnold's vehicle as they both traveled northbound on U.S. 23. Her vehicle had a tinted license plate cover.  He testified that "you couldn't - - you can't read what the license plate said on it.  It was obstructing its view."  Trooper Chaffin testified that the license plate had a "plastic dark-colored cover.  It was transparent but not transparent enough to where you could see it."  He testified, "So as window tint distorts regular glass on your windows, it does the same thing for your license plate to where you can't see what's beyond the window or the license plate cover."  When asked "from how far away does one need to be to see the license plate," he testified, "I believe it's 50 feet. I could be - - it is 50-to-100."  He testified approximately two car lengths is "40 to 50 feet at least." He was 50 feet away "at multiple points" and could not see the license plate clearly.  He also could not read the plate when he was 15 to 20 feet away "[d]ue to the tint of the license plate, how dark it was." On cross-examination, Trooper Chaffin acknowledged the bottom half of the rear of the vehicle was in the shade.

{¶4}   Trooper Chaffin conducted a traffic stop. He testified his usual procedure is to initiate the stop "from my MCT" and "then call out the plate before I ever turn on my lights." In this instance, he could not follow his usual procedure because he was unable to read the plate before he stopped the vehicle due to the license plate cover obstructing

it. When he exited his cruiser and walked up to Arnold's vehicle, he was able to read the plate within a few feet of the vehicle.

{¶5} The trial court orally overruled the motion to suppress. The court found that "the defendant's tag appears darker than other cars in the video, other licenses plates, although it wasn't possible to read any of the license plates from the camera footage." The court found that the "tag is readable, most of the letters and numbers on it, when the camera is right up behind it once the vehicles are stopped." The court noted that the defendant's vehicle "does sort of position the license plate a little lower on the back of the car than most vehicles do." And the court acknowledged Arnold asserted that "it was because of that it was shaded and it was potentially the shading that obstructed any view that might have been there." The court stated, "I think if we were talking about a situation where there wasn't any material on the license plate, maybe that would be a good argument," but "it seemed clear to me that that plastic cover did obstruct the visibility of the license plate." The court stated, "we're dealing with plain language, 'obstructs the visibility,' so it has to block or hinder or impair the ability to see the license plate and I think that's exactly what happened. That's what the officer testified to. There wasn't any real refutation of the fact that it was a tinted plastic cover." The court noted two Second District Court of Appeals cases relied on by the State "seem exactly on point to me," and the court found that "there was sufficient reasonable cause to stop."

{¶6} Subsequently, Arnold pleaded no contest to OVI in violation of R.C. 4511.19(A)(1)(a), and the trial court accepted the no contest plea, found Arnold guilty, and sentenced her. The remaining charges were dismissed.

## II. ASSIGNMENT OF ERROR

{¶7}   Arnold presents one assignment of error: "The trial court erred by denying Ms. Arnold's motion to suppress evidence that was discovered from an unlawful traffic stop."

## III. LAW AND ANALYSIS

{¶8}   In the sole assignment of error, Arnold contends the trial court erred by denying her motion to suppress evidence that was discovered from an unlawful traffic stop.  Arnold maintains that the trial court erred when it rejected her argument about the role the shade played in the trooper's view of the license plate, despite competent, credible evidence that it affected his view of the plate.  She claims "the trooper's assertion and the trial court's ultimate decision that the shade played no role in rendering the plate indiscernible from a distance was not supported by competent, credible evidence, and should not be accepted by this Court." She asserts the trooper acknowledged that the placement of the plate and direction of the sun put the plate in the shade and that the dashcam video shows this.  She claims "the shade did affect the readability of the plate, and once the trooper was close enough to counteract that shade, he could fully read the plate." She maintains that the trial court erroneously blamed the trooper's difficulty in reading the plate "entirely on the plastic cover" and that we should not hold her responsible for the effects of the shade in making the plate challenging to read from a distance.

{¶9}   Arnold also maintains that the trial court erred in denying her motion because the tinted cover did not make the license plate unreadable. She claims the trial court relied on Second District cases that impermissibly added a requirement to R.C.

4503.21 which the statute does not include—that a license plate be readable from a specific distance—and essentially held that having a tinted cover was a per se violation of Ohio law. Arnold claims the plain language of R.C. 4503.21 "makes clear that its purpose is to ensure that license plates are ultimately readable - not that they are perfectly clear from any specific distance as Trooper Chaffin mistakenly testified." So if a material covering the plate does not make it unreadable, it is not prohibited by law. Arnold claims the tinted cover did not make the plate unreadable because Trooper Chaffin admitted he could ultimately read the plate, and "[t]he trial court even found that it could read the plate in the dashcam video when the camera was right behind the car." She asserts that we should hold that mere difficulty in reading a license plate from a distance does not give an officer reasonable suspicion and that to justify a stop, the plate must be unreadable. Arnold claims this case is like, and urges us to follow, *State v. Brown*, 2020-Ohio-896 (1st Dist.). She asserts that this case is distinguishable from other cases relied on by the State, including *State v. Thomas*, 2024-Ohio-5872 (11th Dist.).

## A. Standard of Review

{¶10} "Normally, appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 2014-Ohio-1574, ¶ 7, citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8. The Supreme Court has explained:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *Burnside* at ¶ 8.

### B. Legal Principles

**{¶11}** "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Emerson*, 2012-Ohio-5047, ¶ 15. These provisions provide the same protection in felony cases. *State v. Hawkins*, 2019-Ohio-4210, ¶ 18. "Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *State v. Eatmon*, 2013-Ohio-4812, ¶ 12 (4th Dist.), citing *Katz v. United States*, 389 U.S. 347, 357 (1967). "'Once the defendant demonstrates that he [or she] was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible.'" *Id.*, quoting *State v. Smith*, 2013-Ohio-114, ¶ 12 (4th Dist.).

**{¶12}** We have explained:

> "An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person within the meaning of the Fourth Amendment * * *." *State v. Lewis*, 4th Dist. Scioto No. 08CA3226, 2008-Ohio-6691, ¶ 14. "To be constitutionally valid, the detention must be reasonable under the circumstances." *Id.* While probable cause "is certainly a complete justification for a traffic stop," it is not required. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. So long as "an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Id.* at ¶ 8. Reasonable and articulable suspicion is a lower standard than probable cause. See *id.* at ¶ 23. "To conduct an investigatory stop, the officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity." *State v. Kilbarger*, 2012-Ohio-1521, ¶ 15 (4th Dist.), citing *State v. Williams*, 51 Ohio St.3d 58, 60-61, 554 N.E.2d 108 (1990).

*Eatmon* at ¶ 13. "The existence of reasonable suspicion depends on whether an objectively reasonable police officer would believe that the driver's conduct constituted a traffic violation based on the totality of the circumstances known to the officer at the time of the stop." *State v. Hudson*, 2018-Ohio-2717, ¶ 15 (4th Dist.).

### C. Relevant Statute

**{¶13}** At the time Arnold was cited, R.C. 4503.21(A) stated in relevant part:

(A)(1) No person who is the owner or operator of a motor vehicle shall fail to display in plain view on the rear of the motor vehicle a license plate that displays the distinctive number and registration mark assigned to the motor vehicle by the director of public safety, including any county identification sticker and any validation sticker when required by and issued under sections 4503.19 and 4503.191 of the Revised Code. . . .

(2) The license plate shall be securely fastened so as not to swing, and *shall not be covered by any material that obstructs its visibility*.

(Emphasis added.) 2021 Am. Sub. H.B. 74 (effective June 30, 2021). "'The intent of the law is to require that license plates be visible to law enforcement personnel and others who may have reason to note the number for identification purposes.'" *Thomas*, 2024-Ohio-5872, at ¶ 12 (11th Dist.), quoting *State v. Anderson*, 2018-Ohio-2455, ¶ 18 (11th Dist.).

### D. *State v. Brown*

**{¶14}** In *Brown*, an officer pulled out behind the defendant's vehicle to read its temporary license plate and run it through a database. *Brown*, 2020-Ohio-896, ¶ 3 (1st Dist.). The officer testified that he was unable to read the plate at a normal following distance of two to three car lengths because it had a tinted license plate cover. *Id.* at ¶ 4. Eventually, the officer stopped "'directly behind'" the vehicle at a traffic light, and from that distance, the plate was "'clearly visible.'" *Id.* The officer ran it and received a return

which showed that the vehicle was properly registered and that the defendant had no warrants. *Id.* Then, the officer initiated a traffic stop based on his belief that the tinted license plate cover obstructed the temporary license plate in violation of R.C. 4503.21. *Id.* at ¶ 5. The trial court granted the defendant's motion to suppress. *Id.* at ¶ 1. The trial court found no credible evidence of obstruction prior to the traffic stop. *Id.* at ¶ 16. The trial court found that the tinted license plate cover was not coated with dirt, road salt, mud, or debris, that the weather was clear, and that the sun was shining. *Id.* And the trial court found that the characters were ascertainable from the officer's vehicle. *Id.* Thus, the trial court found that the officer's "'testimony that the cover was "tinted enough that it hindered [his] view and [he] felt that it was clearly in [his] opinion obstructing a reasonable view of the license plate" is problematic because it is clearly inconsistent with the evidence.'" (Bracketed material in original.) *Id.* Thus, "regarding [the officer's] hindered view of [the defendant's] temporary license plate, the trial court found this testimony lacked credibility and it did not believe that [the officer] observed a violation of R.C. 4503.21." *Id.*

{¶15} The appellate court affirmed. *Id.* at ¶ 1. The appellate court explained that the State argued that the officer reasonably believed the defendant violated R.C. 4503.21 because "obstructs" means to make visibility of the placard more difficult. *Id.* at ¶ 13. The defendant argued he could not have violated the statute because "obstructs" means to cut off, as opposed to hinder, visibility. *Id.* at ¶ 13. The appellate court did not have "to make such a determination" because "[t]he proper test is not whether a traffic violation occurred, but whether the officer's belief that a violation occurred was objectively reasonable." *Id.* at ¶ 13-14. The appellate court concluded the trial court's findings were supported by competent, credible evidence, and "[w]here the trial court found no credible

evidence of obstruction, we cannot find that an objectively reasonable police officer would have believed that a violation of R.C. 4503.21 had occurred." *Id.* at ¶ 18-19.

### E. *State v. Thomas*

**{¶16}** In *Thomas*, the officer testified that he was stationed at a particular location after 2 a.m. when he saw a vehicle with a license plate cover which made it impossible to read the license plate or even determine whether there was a plate, even though there were streetlights illuminating the vehicle, no interfering weather conditions, and the officer had 20/20 eyesight. *Thomas*, 2024-Ohio-5872, at ¶ 9 (11th Dist.). He pulled behind the vehicle but still could not read the plate, even with binoculars. *Id.* He initiated a traffic stop, and when he approached the vehicle on foot and was about 10-15 feet behind it, he could read the license plate. *Id.* The trial court found the officer's testimony credible and found that his reasonable belief that the defendant violated R.C. 4503.21 and a related ordinance because the license plate cover obscured the license plate from view until he approached it on foot was sufficient for the officer to conduct an investigative stop. *Id.*

**{¶17}** The appellate court affirmed. *Id.* at ¶ 1. The appellate court rejected the contention that regardless of whether the officer could read the license plate from his cruiser, he was able to read it when he approached the vehicle on foot and therefore lacked a reasonable and articulable suspicion that the defendant was operating his car in violation of the law. *Id.* at ¶ 13. The appellate court explained that when the officer approached the vehicle "on foot and could read the license plate, the stop (or seizure) had already been effected." *Id.* at ¶ 14. The "determinative issue" was whether the officer "could read the plate prior to effecting the stop and approaching on foot." *Id.* The appellate court explained that the officer testified, "and the trial court found as a factual

matter, that he could not do so even with binoculars and even when directly behind [the defendant's] vehicle." *Id.* And "[f]or the purposes of effecting a valid stop, the issue whether [the defendant] had in fact violated R.C. 4503.21 is neither determinative nor relevant." *Id.* "Rather, the issue is whether [the officer] had probable cause to believe that he had done so." *Id*. The appellate court found the case distinguishable from *Brown* because there, unlike in the case before it, "the license plate was legible to the officer before the stop was effected." *Id.* at ¶ 15. Thus, *Brown* did not "contradict the validity of the stop in the present case." *Id.*

{¶18} The appellate court also rejected the contention that once the officer was able to read the characters on the back license plate, the basis for the stop ceased to exist, and the stop should have been terminated. *Id.* at ¶ 16-21. The appellate court explained that it did not have to resolve whether the defendant violated R.C. 4503.21 or whether the officer continued to have a reasonable suspicion of such a violation after approaching the vehicle because the Supreme Court "recently made clear that, after initiating a lawful stop, an officer may approach the driver of the vehicle even where there are no longer grounds for suspicion." *Id.* at ¶ 17. And the appellate court explained that the officer gained additional suspicion of criminal activity upon approaching the vehicle. *Id.* at ¶ 21.

## F. Analysis

{¶19} The trial court did not err when it denied Arnold's motion to suppress. Arnold's contention that the trial court erred when it rejected her argument about the role the shade played in Trooper Chaffin's view of the license plate, despite competent, credible evidence that it affected his view of the plate, is not well-taken. The fact that the

license plate was in the shade and Trooper Chaffin was able to read the plate after the stop, when he was closer to the vehicle, does not prove the shade affected the readability of the plate. Trooper Chaffin testified that prior to the stop, he could not read the plate due to the tinted cover. The trial court was free to believe, and did believe, his testimony.

{¶20} Moreover, even if the shade impacted the readability of the plate, and even if we agreed with Arnold that R.C. 4503.21(A)(2)'s requirement that the license plate "shall not be covered by any material that obstructs its visibility" is not violated unless a material makes the license plate unreadable, the issue in this case is not whether Arnold violated R.C. 4503.21(A)(2). The issue is whether Trooper Chaffin had a reasonable and articulable suspicion that Arnold was violating the statute when he effected the stop. Even under Arnold's interpretation of the statute, an objectively reasonable police officer would believe that Arnold was violating the statute based on the totality of the circumstances known to Trooper Chaffin at the time of the stop. Trooper Chaffin testified that Arnold's license plate had a plastic dark-colored cover over it, that the plate was unreadable as close as 15 to 20 feet away, and that he could not read the plate before he initiated the traffic stop. Based on the totality of the circumstances known to Trooper Chaffin at the time of the stop, an objectively reasonable police officer would believe that Arnold was violating R.C. 4503.21(A)(2).

{¶21} This case is distinguishable from *Brown* and analogous to *Thomas*. Unlike the officer in *Brown*, Trooper Chaffin was unable to read the license plate before he effected a traffic stop. Arnold maintains *Thomas* is distinguishable because unlike the officer in that case, Trooper Chaffin did not testify that he tried to read the license plate with binoculars when directly behind the vehicle, and the trial court in this case found the

license plate was readable from the dashcam video when directly behind the vehicle. But like the officer in *Thomas*, Trooper Chaffin testified, and the trial court believed his testimony, that prior to the traffic stop, he was unable to read the license plate due to the license plate cover. Trooper Chaffin had no obligation to use binoculars or drive as close to the vehicle as possible, potentially endangering himself and other drivers on the highway, including Arnold, before effecting a stop. *See generally* R.C. 4511.21(A) (prohibiting driving a motor vehicle "upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead").

**{¶22}** For the foregoing reasons, we conclude the traffic stop was lawful, so the trial court did not err when it denied Arnold's motion to suppress. Accordingly, we overrule the sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
        Michael D. Hess, Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**